**Exhibit A**

Implementation of Navigable Waters Protection Rule Vacatur
Talking Points, Key Messages, and Questions and Answers
Jan. 4, 2022

DRAFT--DELIBERATIVE--DO NOT DISTRIBUTE

# Implementation of Navigable Waters Protection Rule Vacatur
## Talking Points, Key Messages, and Questions and Answers
### 4 January 2022

**Coordinating Instructions:** This document in its entirety is considered CONTROLLED UNCLASSIFIED INFORMATION and may not be released as a complete document.

The information contained within this document may be used verbally and in writing to inform the public, media, and other stakeholders about the U.S. Army Corps of Engineers (Corps or USACE) implementation of the Administration's response to the U.S. District Court for the District of Arizona's 30 August 2021 order vacating and remanding the Navigable Waters Protection Rule (NWPR) in the case of *Pascua Yaqui Tribe v. U.S. Environmental Protection Agency* and the U.S. District Court for the District of New Mexico's 27 September 2021 order vacating and remanding the NWPR in the case of *Navajo Nation v. Michael Regan, et al*.

**Timing of Roll-Out (*start date 5 Jan 2021*)**

Initial action: All regulatory actions reliant on an NWPR AJD were paused on 21 December 2021 via an email message from Major General Graham to the MSC Commanders until policy direction has been received from the ASA(CW) and the roll-out has been coordinated with our divisions and districts and PAOs.
1. Inform Commanders and Regulatory Program leaders of direction (via memo—DCG-CEO) to guide implementation. DAY1
2. Release Talking Points, Key Messages, and Q/A document (this document) to USACE leaders and PAO community (attachment to message disseminating memo) DAY 1
3. Notify Army Senior Leaders (Message from USACE Senior Leaders) DAY 1
4. Post provided statement on web page DAY 1
5. Regulatory Program national call(s) (1st Call is scheduled for Thursday, 6 January 2022; follow-up, TBD). DAY 2

**Talking Points**

- In light of the U.S. District Court for the District of Arizona's 30 August 2021 order vacating and remanding the Navigable Waters Protection Rule (NWPR) in the case of *Pascua Yaqui Tribe v. U.S. Environmental Protection Agency* and the subsequent 27 September 2021 order from the U.S. District Court for the District of New Mexico that also vacated the NWPR in the case of *Navajo Nation vs. Michael Regan*, *et. al.*, the Assistant Secretary of the Army for Civil Works (ASA(CW)), in collaboration with

DRAFT--DELIBERATIVE--DO NOT DISTRIBUTE

the Environmental Protection Agency (EPA), halted implementation of the Navigable Waters Protection Rule NWPR nationwide and the agencies are interpreting "waters of the United States" under the Clean Water Act (CWA) consistent with the pre-2015 regulatory regime (i.e., the 1986 regulations as amended in 1993 and as implemented through the SWANCC and Rapanos Guidance) until further notice.

- As a general matter, USACE regulatory actions under section 404 of the CWA are governed by the definition of "waters of the United States" that is in effect at the time the Corps completes an approved jurisdictional determination (AJD) and/or a regulatory action, not by the date of the request for an AJD or regulatory action.

- On 15 December 2021, the ASA(CW) provided a statement to USACE specific to implementation of the USACE Regulatory Program in light of the NWPR vacatur. A version of this statement has been posted to EPA's website. That statement clarified the Administration's policy direction and included the following aspects that may affect regulated entities holding a NWPR AJD:
    1. Final NWPR AJDs will not be unilaterally reopened by USACE unless one of the criteria for revision is met under RGL 05-02.
    2. Previously finalized regulatory actions made prior to the court's decision will not be revisited. Final permit decisions may be modified, suspended, or revoked when the criteria at 33 CFR 325.7 are met.
    3. USACE will not rely on NWPR AJDs in making new decisions on regulatory actions. Until a new definition of "waters of the United States" is promulgated, the Corps will make decisions on new regulatory actions pursuant to the currently applicable regulatory regime (i.e., the pre-2015 regulatory regime).

- For current pending regulatory actions and all future regulatory actions that intend to rely on a NWPR AJD, USACE will discuss with the holder of the NWPR AJD whether the holder of the NWPR AJD would like to receive a new AJD, or whether the holder of the NWPR AJD would like to proceed with a preliminary JD or no JD whatsoever, as detailed in Regulatory Guidance Letter 16-01.

- USACE will make every effort to work with regulated entities to ensure they understand the options available if that regulated entity holds a final NWPR AJD and intends to discharge into waters identified as non-jurisdictional under the NWPR, but which may be jurisdictional under the pre-2015 regulatory regime. In particular, regulated entities should be aware that they cannot rely on a NWPR AJD as accurately delineating all jurisdictional waters under the current regulatory regime within the AJD's review area.

DRAFT--DELIBERATIVE--DO NOT DISTRIBUTE

- AJDs issued under the 2015 Clean Water Rule may also not accurately reflect all jurisdictional and non-jurisdictional waters within the AJD's review area under the now-applicable regulations. USACE will make every effort to work with regulated entities to ensure they understand the options available if that regulated entity holds a 2015 Clean Water Rule AJD.

**Key Messages**

**MESSAGE 1:** Following the nationwide vacaturs of the Navigable Waters Protection Rule ("NWPR") the Assistant Secretary of the Army for Civil Works and the EPA, halted implementation of the NWPR nationwide and are interpreting "waters of the United States" (WOTUS) consistent with the pre-2015 regulatory regime until further notice.
  - USACE is implementing its section 404 authority consistent with the interpretation of the ASA(CW) and EPA following the vacatur by the courts.
  - Per the 1979 US Attorney General Civiletti opinion, EPA has the ultimate authority to define the geographic jurisdiction of the Clean Water Act (CWA); USACE has the responsibility to determine geographic jurisdiction on a case-by-case basis, subject to EPA's ultimate authority.

**MESSAGE 2:** USACE districts may no longer finalize any regulatory action that relies on a NWPR AJD to document geographic jurisdiction.
  - Any CWA Section 404 regulatory action completed by USACE from this point forward must have one of the following:
    - Geographic jurisdiction interpreted and documented in the administrative record consistent with the currently applicable WOTUS definition (i.e., an AJD decided under the pre-2015 regulatory regime); or
    - A preliminary jurisdictional determination (PJD); or
    - A delineation of aquatic features impacted by the project (i.e., no jurisdictional determination (JD) at all)

**MESSAGE 3:** This policy change will likely cause delay in decision making.
- Approximately 10,000 AJDs were provided between June 2020 and August 2021. Only a portion of those AJDs have been used to inform decisions on regulatory actions to date. Hundreds of regulatory actions with an associated NWPR AJD are currently under evaluation by the USACE Regulatory Program across its 38 Districts.
  - USACE is dedicated to working with regulated entities holding NWPR AJDs to ensure a full understanding of the options available for timely decision making.

DRAFT--DELIBERATIVE--DO NOT DISTRIBUTE

**MESSAGE 4:** Persons holding NWPR AJDs can no longer rely on those AJDs as accurately depicting jurisdictional waters within the review area of the AJD under the now-applicable regulations.

- Even if the Corps does not revisit those AJDs or make permit or other regulatory decisions based on them, regulated entities often use AJDs for other purposes, such as informing their decisions about whether and where to discharge dredged or fill material.
- USACE is dedicated to working with regulated entities to ensure a full understanding of the options available for timely decision making and to reduce risk.

## Questions and Answers

Q: This policy change will send many nearly complete reviews back to the drawing board, proposals that qualified for general permits will now become individual permits, and delays to decision making will increase. Has this been considered?
A: We understand that this will be disruptive to some project reviews. Every effort will be taken to work with project proponents to ensure that information is provided to enable informed decisions to be made. To that end, Districts have been informed to contact affected project proponents as quickly as possible to discuss, as detailed in Regulatory Guidance Letter (RGL) 16-01, whether the project proponent would like to receive a new AJD completed under the pre-2015 regulatory regime to continue their permit processing or whether the project proponent would like to proceed in reliance on a preliminary JD or no JD whatsoever.

Q: If the same wetlands/waters were determined jurisdictional under NWPR as would be determined under the pre-2015 regulatory regime, can the resulting action proceed?
A: Yes, once USACE updates its documentation to reflect those facts in the administrative record for the regulatory action. All decisions on permits and other regulatory actions, such as permit modifications and no-permit required letters, must be informed by the current definition of WOTUS. The regulatory review process does not need to be "restarted" in any case; however, the documentation must be updated in instances where an NWPR AJD was being used to inform the evaluation of the regulatory action. That means that all regulatory actions must have either
(1) geographic jurisdiction interpreted and documented in the administrative record consistent with the currently applicable WOTUS definition (i.e., an AJD decided under the pre-2015 regulatory regime); or,
(2) a PJD; or,
(3) a delineation of aquatic features impacted by the project that is not reliant on a JD.

Q: Can a non-jurisdictional determination made under the NWPR be used to support the discharge of dredged or fill material into aquatic resources that are considered to be waters of the U.S. under the pre-2015 regime?

DRAFT--DELIBERATIVE--DO NOT DISTRIBUTE

A: Not without a permit.  Per 33 CFR 323.3(a), "*Except as provided in § 323.4 of this part, DA permits will be required for the discharge of dredged or fill material into waters of the United States.*" We understand that many NWPR AJDs were provided between June 2020 and August 2021 and that regulated entities may wish to use those AJDs to inform actions without consultation with USACE or EPA. USACE is dedicated to working with landowners holding AJDs issued under rules no longer in effect to ensure a full understanding of the options available to them.

Q: Is this applicable to all NWPR AJDs, regardless of whether they were affirmative vs. documented a lack of jurisdiction?
A: Yes. We understand that this will be disruptive to some project reviews and are committed to working with holders of NWPR AJDs to ensure they have a full understanding of the options available.

Q: Why is this rule change being handled differently than rule changes in the past?
A: A repeal of a rule through the rulemaking process is different than the vacatur of a rule by a court. As part of the rulemaking process agencies and the public can address if and how specific actions completed under a prior rule can be "grandfathered" to continue to be given effect even after the rule is repealed. In contrast, neither of the federal district court vacaturs of the NWPR made any provision for "grandfathering" decisions under the vacated rule. USACE is committed to working proactively with holders of NWPR AJDs to ensure a full understanding of the options available to them to enable informed decision making.

Q: Is USACE reaching out individually to all holders of NWPR AJDs to notify them of this change?
A: No. EPA, Army, and USACE are all sharing policy and implementation information on public websites specific to the effect of the NWPR vacaturs. USACE district offices are ready to discuss options with affected parties and the public to ensure there is understanding. This transparency is intended to assist regulated entities in determining the most appropriate path forward with projects they may wish to pursue.

Q: Is USACE revisiting final regulatory actions that relied on NWPR AJDs, including no permit required letters, even if all the work has not yet been completed?
A:  No. However, recipients of NWPR AJDs should be aware that AJDs provided under the NWPR and other prior rules may not accurately depict jurisdictional waters within the review area of the AJD under the currently applicable definition of WOTUS. If the project proponent elects to return to USACE to discuss options, USACE is prepared to inform those discussions.

Q: Is USACE revisiting final regulatory actions, including final issued permits, that were provided between 30 Aug 2021 and 21 December 2021 and relied upon an NWPR AJD?
A: USACE is not re-opening any final regulatory actions, including final permit actions, as a result of this policy decision. Final permit actions will remain effective unless the

DRAFT--DELIBERATIVE--DO NOT DISTRIBUTE

permit is modified, suspended, or revoked per 33 C.F.R. § 325.7 where the regulatory criteria are met.

**Q: How will a district respond to a question from recipient of a finalized action (e.g., a permit/ permit modification/no permit required determination) that was reliant on a NWPR AJD regarding risk of litigation?**
A**:** USACE is not re-opening any final regulatory actions, including final permit actions, as a result of this policy direction. Final permit actions will remain effective unless the permit is modified, suspended, or revoked.  USACE is dedicated to working with recipients of decisions on regulatory actions that were based on a NWPR AJD to ensure a full understanding of the options available to them.

**Q: Can a district finalize a regulatory action that is reliant on a 2015 Clean Water Rule AJD since that rule was repealed? If so, why?**
A: Yes, once USACE updates its documentation to reflect the current regulatory regime and jurisdiction in its administrative record.  All permits and other regulatory actions, such as permit modifications and no-permit required letters, must be informed by the current definition of WOTUS. As mentioned previously, the regulatory review process does not need to be "restarted;" however, the documentation must be updated in instances where a Clean Water Rule AJD was being used to inform the permit evaluation. That means that all regulatory actions must have either
(1) geographic jurisdiction interpreted and documented in the administrative record consistent with the currently applicable WOTUS definition (i.e., an AJD decided under the pre-2015 regulatory regime); or,
(2) a PJD; or,
(3) a delineation of aquatic features impacted by the project that is not reliant on a JD

**Q: Some states have isolated waters permit programs that rely on USACE AJDs. Can the states rely on NWPR AJDs to process their isolated waters permits? How should districts handle states pushing back on the validity of NWPR AJDs in these scenarios?**
A: In states that have not assumed 404 permitting responsibilities in certain waters (i.e., states other than Florida, New Jersey, and Michigan), how the state uses USACE AJDs is at the state's discretion. USACE will implement the policy direction provided by the Administration. States with an existing 404(g) program approved by EPA should consult with EPA to determine the path forward in assumed waters.