**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATIONAL WILDLIFE REFUGE ASSOCIATION, NATIONAL PARKS CONSERVATION ASSOCIATION, DEFENDERS OF WILDLIFE, and CENTER FOR BIOLOGICAL DIVERSITY,

Plaintiffs,

v.

UNITED STATES ARMY CORPS OF ENGINEERS and MICHAEL CONNOR, in his official capacity as Assistant Secretary of the Army for Civil Works,

Defendants.

Civil Action No. 1:22-cv-03498-JDB

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE BY TWIN PINES MINERALS, LLC**

Twin Pines Minerals, LLC ("Twin Pines") submits this memorandum in support of its Motion to Intervene under Federal Rule of Civil Procedure 24. Twin Pines has a right to intervene under Rule 24(a) because the two "Approved Jurisdictional Determinations" ("AJDs") Plaintiffs have asked this Court to set aside belong to Twin Pines. The Defendant United States Army Corps of Engineers issued the AJDs to Twin Pines in November 2020 and April 2021; rescinded them in June 2022; and reinstated them on August 22, 2022 pursuant to a Settlement Agreement (Exhibit 1) with Twin Pines. Because Twin Pines has a substantial, legally protectible interest in the AJDs and its Settlement Agreement with the United States, it is entitled to intervene in this case to defend them.

Alternatively, Twin Pines should be granted leave to intervene under Rule 24(b) because it has an overwhelming interest in the resolution of this case; its unique perspective will aid the

Court in the resolution of the issues presented; and its participation will not unduly delay this action or otherwise prejudice the existing parties.

## I. Background

Heavy minerals sands are sediments containing dense minerals that accumulate with sand, silt, and clay in coastal environments. Exhibit 2, Stanford Decl. ¶¶ 4-6. Minerals and metals derived from these sediments are in high demand around the world. Two such products — titanium and zirconium — have been identified by the federal government as “critical minerals” essential to the economic or national security of the U.S., but vulnerable to supply chain disruptions. Stanford Decl. ¶ 7; 87 Fed. Reg. 10381 (Feb. 24, 2022). The U.S. Geological Survey has found that the “extensive heavy-mineral sand deposits in the southeastern U.S. coastal plain represent an enormous, under-utilized domestic source of these mineral resources.” Stanford Decl. ¶ 6.

Twin Pines has been working since 2017 to develop a heavy mineral-sands mine in Charlton County, Georgia. Exhibit 3, Ingle Decl. ¶ 4. The proposed mine site is located on Trail Ridge, an ancient dune system in Southeast Georgia and Northeast Florida about 60 km inland from the present coastline. The Proposed mine site is located 3 miles from the southeast corner of the boundary of the Okefenokee National Wildlife Refuge — about 11 miles from the nearest point on the nearest canoe trail. Stanford Decl. ¶¶ 8-9. The site is bounded to the south by Highway 94 and the Norfolk Southern Railway. *Id*.

Despite messaging to the contrary, the proposed mine site is not swampland, and it is far from pristine. It was a commercial pine plantation for most of the past century. Because silvicultural activities are exempt from Clean Water Act requirements, wetlands onsite were severely degraded by such activities during this extended period. And then in 2017, the site was

almost completely denuded by the West Mims fire. *Id.* ¶ 9. Unsurprisingly, no endangered species or cultural or historical resources have been identified on the site. As the regulatory process proceeds, the evidence will show that the proposed mine poses no threat whatsoever to the Okefenokee Swamp or the surrounding environment.

## II. Legal Framework

Various state and federal permits will be required before any mining can occur. Most importantly, a Surface Mining Permit will be required under the Georgia Surface Mining Act, O.C.G.A. § 12-4-70, *et. seq.*, which provides that a permit will be issued only if the Georgia Environmental Protection Division concludes the proposed activity is consistent with the protection of neighboring lands and the environment. *See* O.C.G.A. § 12-4-75.

Plaintiffs believe a federal permit under Section 404 of the Clean Water Act, 33 U.S.C. § 1344, is also required because they contend wetlands on-site constitute "waters of the United States." Section 404 prohibits discharging "dredged or fill material" — a term that includes dirt — into "navigable waters," which the Act vaguely defines as the "waters of the United States, including the territorial seas." *Id.* § 1311(a), § 1362(12), (7).

Because it is often impossible for ordinary landowners to discern if "waters of the United States" are present on their land, the Army Corps of Engineers has developed a process to make such determinations, and thus to determine if federal permits are required for activities that result in a "discharge" into such areas. Upon request, the Corps will issue an "approved jurisdictional determination," or "AJD," stating whether waters of the United States are present or absent on a given parcel. 33 C.F.R. 331.1(a). AJDs are explicitly intended to be relied upon, directly assuring landowners that they will remain valid for five years. During the five-year term of an AJD, it can be revised only if warranted by "new information." Exhibit 4, U.S. Army Corps of Engineers,

Regulatory Guidance Letter 05–02, Expiration of Geographic Jurisdictional Determinations of Waters of the United States, at 1 (June 14, 2005); *see also U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597–98 (2016).

A longstanding Memorandum of Agreement between the Corps and EPA tasks the Corps with issuing AJDs except in certain narrow circumstances not applicable here.[1] AJDs issued "pursuant to the terms of th[e] MOA" are "'binding on the Government and represent the Government's position in any subsequent Federal action or litigation concerning that final determination.'" *Hawkes*, 578 U.S. at 598 (quoting 1989 Memorandum of Agreement, §§ IV-C-2, VI-A).

## III. Regulatory Proceedings

### A. Twin Pines' application to the Corps for a Section 404 Permit

Twin Pines has invested more than $47 million in the development of the mine, including more than $14.7 million to acquire property for the mine, $13.5 million to purchase, transport, and maintain mining and mineral processing equipment, $3 million for exploration, research, and development costs, and more than $16 million for permitting and engineering costs. Ingle Decl. ¶ 4.

Based on jurisdictional rules in effect when the project started, Twin Pines initially applied to the Corps for an individual Section 404 permit. Stanford Decl. ¶ 25. In 2020, however, the Corps and the U.S. Environmental Protection Agency promulgated the "Navigable Waters Protection Rule," which established a new definition of "waters of the United States" under the

---

[1] *See* Memorandum of Agreement Between the DOA and EPA Concerning the Determination of the Geographic Jurisdiction of the Section 404 Program and the Application of the Exemptions Under 404(f) of the Clean Water Act (1989), *available at* https://bit.ly/1989-MOA.

Clean Water Act and thus altered the Act's jurisdictional reach. *See* The Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22250 (Apr. 21, 2020).

After the Navigable Waters Protection Rule took effect, Twin Pines requested an AJD to determine the jurisdictional status of its property under the new rule. Stanford Decl. ¶ 26. This led to a September 16, 2020 site visit in which the Corps observed that additional areas were probably non-jurisdictional. Twin Pines thus withdrew its initial AJD request and submitted a new one on September 25, 2020 covering certain of the additional areas, which the Corps issued on October 15, 2020. *Id*. ¶¶ 26-27, 29-33 & Ex. A; Ingle Decl. ¶ 7. The 2020 AJD explicitly states it will remain valid for 5 years. Stanford Decl., ¶ 33 & Ex. A at 1.

After receiving the 2020 AJD, Twin Pines observed that the proposed mine site could be redrawn to avoid any remaining jurisdictional areas. Twin Pines reconfigured its project accordingly and withdrew its application for a Section 404 Permit. It then submitted a second request for an AJD to the Corps on November 19, 2020, to cover the remaining areas identified during the September site visit. Stanford Decl. ¶ 28. Granting this request, the Corps issued a second AJD on March 24, 2021. *Id.* ¶¶ 28-32, 34 & Ex. B.

In reliance on the AJDs, Twin Pines revised its application for a state Surface Mining Permit, which was pending before the Georgia Environmental Protection Division ("Georgia EPD"). *Id.* ¶ 36. The revised application reflected the reconfigured mine, described above, which covered areas addressed by the AJDs and avoided any waters that might be jurisdictional under the Clean Water Act. *Id.*

**B. The Corps' rescission and restoration of Twin Pines' AJDs**

The Corps revoked both of Twin Pines' AJDs on June 8, 2023, long before their five year terms had expired. Ingle Decl., Ex. C. The Corps' June 3, 2022 memorandum preceding the

revocation stated that the AJDs were being withdrawn because the Corps had not consulted with the Muscogee (Creek) Nation before issuing them. *Id.* Georgia EPD responded to the Corps' decision to revoke Twin Pines' AJDs by immediately suspending work on the State permits, stating it would not resume processing Twin Pines' application until the question of federal jurisdiction was resolved. Ingle Decl., Ex. B.

**C. Twin Pines' settlement with the United States and the reinstatement of its AJDs**

Twin Pines filed suit in the Southern District of Georgia, where the project is located, to challenge the Corps' revocation of the AJDs. *See Twin Pines Minerals, LLC v. U.S. Army Corps of Eng'rs*, Civil Action No. 5:22-36 (S.D. Ga. filed Jun. 22, 2022). Its complaint alleged that the reasons stated by the Corps for revoking the AJDs was both pretextual and legally inadequate. *See id.,* Doc. 1. Twin Pines moved the court for a preliminary injunction on July 8, 2022. *See id.*, Doc. 19. The Corps and Twin Pines then entered into settlement discussions, which resulted in the Settlement Agreement attached as Exhibit A that is the subject of this action. The Settlement Agreement provided for Twin Pines' AJDs to be reinstated and for their expiration date to be tolled for a period of time equal to the number of days lost due to the revocation before the AJDs were reinstated. Settlement Agreement, ¶¶ 3-8. A copy of the letter from the Savannah District reinstating Twin Pines' AJDs is attached as Exhibit 5.

**D. Georgia EPD's resumes work on Twin Pines' State permit**

Georgia EPD resumed work on Twin Pines' permit application after the AJDs were reinstated. On January 19, 2022, the agency opened a 60-day public comment period on Twin Pines' proposed Surface Mining Permit. *See* Georgia EPD, Notice of the Opportunity for Public Comment (Jan. 19, 2023), *available at* https://epd.georgia.gov/twin-pines. Two public hearings will be held on February 21, 2023 and February 23, 2023, respectively. *Id.* at 2. In addition, Georgia EPD has announced its intention to hold a second public comment period on the

proposed Surface Mining Permit and other necessary environmental permits after the issues raised during the first comment period have been resolved. *Id.*

## ARGUMENT AND CITATION OF AUTHORITY

### I. Twin Pines Has a Right to Intervene under Rule 24(a)

A party is entitled to intervene as a matter of right under Rule 24(a) if four requirements are met: (1) the application is timely; (2) the applicant has a legally protectable "'interest relating to the property or transaction which is the subject of the action;'" (3) "'the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest;'" and (4) the applicant's interest is not adequately represented by existing parties. *Fund for Animals v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (quoting Fed. R. Civ. P. 24(a)). Applicants seeking intervention as of right must also demonstrate that they have Article III standing. *Id.* at 731-32; *Deutsche Bank Nat. Tr. Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013). Twin Pines easily meets these requirements.

#### A. Twin Pines' application is timely

The first factor for intervention under Rule 24(a) is timeliness. *Fund for Animals*, 322 F.3d at 731. The Federal Defendants filed their answer to Plaintiffs' complaint less than two weeks ago, on January 20, 2023. Doc. 13. There have been no substantive proceedings in the case to date. Accordingly, Twin Pines' application is timely.

#### B. Twin Pines has an interest relating to the subject of this action

The second requirement for intervention as of right is "an interest relating to the property or transaction which is the subject of the action." *Fund for Animals*, 322 F.3d at 731; Fed. R. Civ. P. 24(a)(2). Because the "transaction" that is the subject of this action is literally a Settlement Agreement between the Corps and Twin Pines — and two AJDs reissued to Twin

Pines as a direct result of that agreement — Twin Pines' interest in the subject matter of this action could not be stronger.

**C. Disposition of this action in Plaintiff's favor would impair Twin Pines' ability to protect its interests as a practical matter**

The third factor for intervention as of right is whether, "as a practical matter," the disposition of the current action may "impair or impede" the intervenor's ability to protect its interests. *Fund For Animals*, 322 F.3d at 735; Fed. R. Civ. P. 24(a)(2). This test is easily met, because Plaintiffs seek to set Twin Pines' Settlement Agreement with the Corps aside, and to rescind two AJDs upon which Twin Pines is legally entitled to rely.

Moreover, as history shows, the Corps' recission of Twin Pines AJDs caused the State of Georgia to halt its review of permits Twin Pines requires to develop its mine. This directly harmed Twin Pines' business, Ingle Decl. ¶¶ 13, 15-22, causing a "distinct injury" and "irreparable harm" to Twin Pines, *see Brantley Cnty. Dev. Partners, LLC v. Brantley Cnty.*, 540 F. Supp. 3d 1291, 1302–03, 1317–18 (S.D. Ga. 2021) (finding irreparable harm where county's action caused "Plaintiff's EPD permit application [to] remain pending indefinitely" and "hinder[ed], delay[ed], and obstruct[ed] Plaintiff's right to develop its property" and "[w]ithout issuance of an injunction, the EPD permitting process [would] not go forward," explaining: "Plaintiff suffers irreparable harm from the EPD's delayed permitting decision because Plaintiff is precluded from entering and finalizing solid waste disposal contracts with market participants"); *see also Pine Ridge Recycling, Inc. v. Butts Cnty.*, 864 F. Supp. 1338, 1342 (M.D. Ga. 1994) (finding irreparable harm where Plaintiff had not received a permit from Georgia EPD, could not begin construction of the proposed facility, and could not enter into disposal contracts). Twin Pines thus has a strong interest in ensuring its AJDs remain in effect.

**D. Twin Pines' interests are not represented or shared by any party**

The fourth requirement for intervention is that the proposed intervenor's interests are not adequately represented by the present parties. Neither party "adequately represents" or even remotely shares Twin Pines' interest in the Settlement Agreement or the two AJDs. Plaintiffs are adamantly opposed to Twin Pines' project. And the Federal Defendants, having already rescinded Twin Pines' AJDs once, do not share Twin Pines strong interests in preserving the AJD's validity and ensuring its project can move forward.

**E. Twin Pines has standing to intervene**

An applicant for intervention must also demonstrate Article III standing, which requires (1) injury-in-fact, (2) causation, and (3) redressability. *Fund for Animals*, 322 F.3d at 732-33 (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992)). This requirement is easily satisfied.

An order granting Plaintiffs relief would cause real and substantial injury to Twin Pines. As discussed above, and as described more fully in Mr. Ingle's attached Declaration, the Corps' prior recission of Twin Pines' AJDs directly interfered with Twin Pines' business. Ingle Decl. ¶¶ 13, 15-22. Further, recission of the AJDs would subject Twin Pines to new and significantly more expansive jurisdictional rules than were in effect when the AJDs were issued. As a result, large areas of Twin Pines property that were not previously subject to Clean Water Act jurisdiction may now be. Ingle Decl. ¶ 16; Stanford Decl. ¶¶ 39-40. This would either preclude Twin Pines from developing those areas without renewing its application for a Section 404 permit — a process that would take years to complete — or require it to forego mining in any potentially jurisdictional areas, preventing it from developing as much as 60% of its property and leaving minerals worth millions of dollars in the ground. Ingle Decl. ¶¶ 17-19; Stanford Decl. ¶¶ 40, 42.

Here, if Plaintiffs' request for relief were granted, the order granting such relief would be the direct cause of Twin Pine's injury; and this injury could be avoided, and thus completely "redressed," by denying Plaintiffs' request and upholding the validity of Twin Pines' settlement and its AJDs.

## II. Twin Pines Should Be Granted Permissive Intervention

Twin Pines is entitled to intervene under Rule 24(a) for the reasons described above. But if the Court were to determine for any reason that it is not, then Twin Pines should be permitted to intervene permissively under Rule 24(b), which allows intervention "on timely motion" when the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In determining whether to grant intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(c). The Court "may also consider such factors as the nature and extent of the applicant's interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to … the just and equitable adjudication of the legal question presented." *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.D.C. 2010) (quotations omitted). Where potential intervenors have a vital interest in the result of litigation, courts should "'grant[] permission to intervene as a matter of course unless compelling reasons against such intervention are shown.'" *Textile Workers Union of Am., CIO v. Allendale Co.*, 226 F.2d 765, 770 (D.C. Cir. 1955) (quoting *Wolpe v. Poretsky*, 144 F.2d 505, 508 (1944)).

Twin Pines meets these criteria because it has an overwhelming interest in the outcome of this case. Twin Pines' defense of its AJDs will share many legal and factual issues with the Corps' defense. Its participation will also aid the Court and contribute to the just and equitable

resolution of this case. Twin Pines and the Federal Defendants have different perspectives on the legality of the original decision to revoke Twin Pines' AJDs and the legal reasons requiring the Corps to reinstate them. The Court should here those perspectives before rendering any decision regarding the legality of the Corps' actions.

Finally, as discussed above, Twin Pines' request for intervention is timely and will neither delay the case nor prejudice the other parties. The case is in its infancy; there have been no procedural or dispositive motions; and no future proceedings are currently scheduled.

## III. Conclusion

For these reasons, Twin Pines respectfully requests leave to intervene under Rule 24.

Respectfully submitted this 3rd day of February, 2023,

JONES FORTUNA LP

*/s/ Lewis B. Jones*
LEWIS B. JONES
Georgia State Bar No. 042498
JOHN L. FORTUNA
Georgia State Bar No. 435149

111 New Street, Suite A
Decatur, GA 30030
Phone: 404-862-3234
Email: ljones@jonesfortua.com
jfortuna@jonesfortuna.com

*Counsel for Twin Pines Minerals*

**CERTIFICATE OF SERVICE**

I certify that on this date, I filed the foregoing Memorandum of Law in Support of Motion to Intervene by Twin Pines Minerals LLC with the Court's CMS/ECF system, which will notify each party.

*/s/ John L. Fortuna*

*Counsel for Twin Pines Minerals, LLC*