## SETTLEMENT AGREEMENT

Twin Pines Minerals, LLC ("Plaintiff" or "Twin Pines") and the United States Army Corps of Engineers; Christine E. Wormuth, in her official capacity as the Secretary of the Army; Michael L. Connor, in his official capacity as Assistant Secretary of the Army (Civil Works); LTG Scott A. Spellmon, in his official capacity as Chief of Engineers; BG Jason E. Kelly, in his official capacity as Commander, South Atlantic Division, United States Army Corps of Engineers; and COL Joseph R. Geary, in his official capacity as Commander, Savannah District, United States Army Corps of Engineers (collectively, "Defendants") enter into this Settlement Agreement ("Agreement").

WHEREAS, on October 15, 2020 and March 24, 2021, the United States Army Corps of Engineers, Savannah District, issued two negative Clean Water Act stand-alone approved jurisdictional determinations with respect to Plaintiff's property in Charlton County, Georgia (the "Twin Pines AJDs");[1]

WHEREAS, the Twin Pines AJDs state (*inter alia*) that they "will remain valid for a period of 5-years unless new information warrants revision prior to that date";

WHEREAS, on August 30, 2021, the United States District Court for the District of Arizona in the case of *Pascua Yaqui Tribe v. U.S. Environmental Protection Agency* issued an order vacating and remanding the Navigable Waters Protection Rule ("NWPR"), the rule defining "waters of the United States" under the Clean Water Act which the United States Army Corps of Engineers, Savannah District, had applied in the Twin Pines AJDs;

WHEREAS, on January 5, 2022, the United States Environmental Protection Agency and the United States Army Corps of Engineers issued a public statement regarding the NWPR court

---

[1] ORM Numbers: SAS-2018-00554 and SAS-2018-00554-ACM

1

order referenced above, stating that (*inter alia*) although they have halted implementation of the NWPR nationwide, stand-alone AJDs completed prior to August 30, 2021, "will not be reopened until their expiration date, unless one of the criteria for revision is met under [Regulatory Guidance Letter] 05-02";

WHEREAS, on June 3, 2022, the Assistant Secretary of the Army (Civil Works) (the "Assistant Secretary") issued a memorandum (the "June 3 Memorandum") that (*inter alia*) directed the United States Army Corps of Engineers, Savannah District, to inform Twin Pines that it "cannot rely on [the Twin Pines AJDs] to accurately delineate jurisdictional waters under the current regulatory regime and that [the Twin Pines] NWPR AJDs are not valid because government-to-government consultations for the Federal actions regarding the determinations of jurisdictional status of waters on the parcel were not conducted as requested by" the Muscogee (Creek) Nation;

WHEREAS, on June 7, 2022, the Georgia Environmental Protection Division ("Georgia EPD") issued a Permitting Update stating that it was "deferring action on all applications" for permits related to Plaintiff's project, and that Georgia EPD would "determine the best process for consideration of these permit applications" "[f]ollowing the conclusion of the federal process";

WHEREAS, on June 8, 2022, the United States Army Corps of Engineers, Savannah District, notified Plaintiff (*inter alia*) that the Twin Pines AJDs are invalid, in accordance with the June 3 Memorandum;

WHEREAS, on June 22, 2022, Plaintiff filed a complaint against Defendants in the United States District Court for the Southern District of Georgia ("Court"), Civil Action No.

5:22-cv-36, seeking review of Defendants' June 2022 actions regarding the validity of the Twin Pines AJDs;

WHEREAS, on July 8, 2022, Plaintiff filed a motion for a preliminary injunction;

WHEREAS, in its complaint and motion for a preliminary injunction, Twin Pines alleges that it has suffered and continues to suffer substantial delays and other harms caused by Defendants' June 2022 actions and Georgia EPD's June 7 decision to defer action on related state permits;

WHEREAS, before Defendants filed any response to Plaintiff's complaint or motion for a preliminary injunction, and before any adjudication by the Court of the complaint or motion, Plaintiff and Defendants (collectively, the "Parties") entered into settlement discussions;

WHEREAS, the Parties wish to resolve, without contested litigation, Plaintiff's challenges to Defendants' actions regarding the validity of the Twin Pines AJDs;

NOW, THEREFORE, without admission of any issue of fact or law, or waiver of any claim or defense except to the extent (if any) provided below, the Parties agree as follows:

## I.   GENERAL PROVISIONS

1. The parties to this Agreement are those entities defined above as Plaintiff and Defendants, collectively the "Parties." This Agreement applies to, is binding upon, and inures to the benefit of the Parties, and their successors, assigns, and designees.

2. This Agreement becomes effective on the date that a fully executed copy of the Agreement is delivered by Defendants to Plaintiff via electronic mail sent from Defendants' Department of Justice counsel ("Effective Date").

## II.   REINSTATEMENT OF THE TWIN PINES AJDs

3.  Defendants withdraw, as to Twin Pines only, the Assistant Secretary's June 3 Memorandum (described in the whereas clause above).

4.  Defendants withdraw the United States Army Corps of Engineers, Savannah District's June 8 letter to Twin Pines (described in the whereas clause above).

5.  The Parties agree that the Twin Pines AJDs have the same status that they had on June 2, 2022 (just prior to the June 3 Memorandum); i.e., the Twin Pines AJDs are: (a) final agency actions, in that each action "mark[s] the consummation of the agency's decisionmaking process" and is "one by which rights or obligations have been determined, or from which legal consequences will flow," *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)); (b) "binding on the Government" within the meaning of the 1989 Memorandum of Agreement between the United States Environmental Protection Agency and the United States Department of the Army concerning the determination of the geographic jurisdictional scope of "waters of the United States" for purposes of Clean Water Act section 404, available at https://www.epa.gov/cwa-404/memorandum-agreement-determination-geographic-jurisdiction-section-404-program-and; (c) "valid for a period of five years" within the meaning of Regulatory Guidance Letter 05-02; and (d) subject to revision within the five-year period based on "new information" under Regulatory Guidance Letter 05-02.

6.  The Parties agree that, for purposes of calculating the expiration date for the Twin Pines AJDs, the period of time starting on June 3, 2022, and ending on the Effective Date of this Agreement shall be tolled. Thus, for example, if the Effective Date of this Agreement is August 31, 2022, then the AJD issued on October 15, 2020, shall have an expiration date of January 13,

2026, instead of October 15, 2025 (to account for the 90 days tolled between June 3 and August 31).

7. Within seven days of the Effective Date of this Agreement, the United States Army Corps of Engineers, Savannah District, shall provide a letter to Twin Pines reiterating that the Twin Pines AJDs are valid consistent with Paragraph 5 above, and calculating the Twin Pines AJDs' expiration dates consistent with Paragraph 6 above.

8. Defendants shall not assert in the future that the Twin Pines AJDs are invalid, or otherwise call them into question, on the sole ground that government-to-government consultations with the Muscogee (Creek) Nation or any other entity were not conducted. In all other respects, the purpose of this Settlement Agreement is to restore the *status quo ante*; i.e., the Parties' positions as of June 2, 2022 (just prior to the June 3 Memorandum).

### III. DISMISSAL OF LITIGATION

9. Within 10 days of the Effective Date of this Agreement, Plaintiff shall file a notice of voluntary dismissal of its complaint pursuant to Fed. R. Civ. P. 41(a)(1)(A), and each side shall bear its own attorneys' fees and costs. The Parties shall regard the dismissal to be with prejudice, except to the extent that Plaintiff subsequently contends that Defendants have violated this Agreement and Plaintiff complies with Paragraph 15 below.

10. The Parties agree to move the Court to extend all upcoming litigation deadlines (including Defendants' deadlines to respond to Plaintiff's motion for a preliminary injunction and to answer Plaintiff's complaint) until after Plaintiff files its notice of voluntary dismissal.

11. If the Court takes any action inconsistent with the Parties' efforts to stay or extend deadlines or Plaintiff's notice of voluntary dismissal, this Agreement shall cease being effective

unless and until (and to the extent) it is revived by a subsequent Settlement Agreement executed by the Parties.

## IV. MODIFICATION OF THIS SETTLEMENT AGREEMENT

12. Any party interested in modifying this Agreement, in whole or in part, shall provide the Parties written notice of the proposed modification and the reasons for such proposed modification. The Parties agree to meet and confer (virtually, telephonically, or in person) no later than 10 days after such written notice (or such time thereafter as is mutually agreed upon) in a good faith effort to resolve any modification dispute and agree upon a modification to the Agreement (and any necessary Court process). No modification of this Agreement, in whole or in part, is effective in the absence of the written consent of the Parties. Similarly, a mere request by any party to modify this Agreement does not halt or change the due date for any party's obligation under this Agreement.

## V. RESERVATIONS

13. Except as set forth in this Agreement, the Parties retain all rights, claims, defenses, and discretion they may otherwise have. No provision of this Agreement shall be interpreted as, or constitutes, a commitment or requirement that Defendants take action in contravention of the Clean Water Act, the Administrative Procedure Act, or any other law or regulation, either substantive or procedural. Except as expressly provided in this Agreement, nothing herein shall be construed to limit or modify, or does limit or modify, any discretion accorded to Defendants by statute, regulation, or by general principles of administrative law. By the same token, and except as expressly provided in this Agreement, nothing herein shall be construed to limit or modify, or does limit or modify, Plaintiff's ability to challenge any future actions by Defendants in a newly filed judicial action.

14. Nothing in the terms of this Agreement shall be construed to limit or deny, or does limit or deny, the power of a federal official or agency to promulgate or amend regulations or to publish or amend policies.

## VI. DISPUTE RESOLUTION; REMEDY FOR NON-COMPLIANCE

15. If any party believes another party has failed to comply with any provision of this Agreement, the party asserting noncompliance shall provide the other(s) with written notice and the basis for the alleged noncompliance. The Parties shall meet and confer (virtually, telephonically, or in person) to attempt to resolve the dispute within 10 days of such written notice or such time thereafter as is agreed upon by the Parties. If the Parties are unable to resolve the dispute, a party's sole remedy for asserted noncompliance is to move the Court to reactivate this case (No. 5:22-cv-36), and any such resumption of active litigation renders any remaining obligations of the Parties under this Agreement null and void. Further, in that scenario, Defendants do not waive or limit any defense relating to such motion (or to the complaint, motion for a preliminary injunction, or any other aspect of the litigation). By the same token, in that scenario, Plaintiff does not waive or limit any claim, or any right to amend any existing claim, based on actions taken in asserted noncompliance with this Agreement. The Parties agree that contempt of Court is not an available remedy for any alleged or actual violation of this Agreement.

## VII. FORCE MAJEURE

16. The possibility exists that circumstances outside the reasonable control of a party could delay its compliance with the timelines, responsibilities, or other expectations contained in this Agreement. On Defendants' side, such situations include, but are not limited to, a government shutdown or an extreme weather event that prevents Defendants' staff from meeting the

7

timelines, fulfilling the responsibilities, or meeting the expectations contained in provisions to this Agreement. Should a delay occur due to such circumstances, any resulting failure by Defendants under this Agreement shall not constitute a failure to comply with the terms of this Agreement, and any timelines so affected shall be extended one day for each day of the delay. The party invoking this provision (force majeure) shall provide the opposing party with reasonable notice and explanation for the delay. Any dispute regarding invocation of this provision, or the length of the claimed delay, shall be resolved in accordance with the dispute resolution provision of Section VI of this Agreement.

### VIII.   ANTI-DEFICIENCY ACT

17. Defendants' obligations under this Agreement are subject to the availability of appropriated funds applicable for such purpose. No provision of this Agreement shall be interpreted as, or constitutes, a commitment or requirement that Defendants are obligated to pay funds exceeding those available, or take any action in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or take any action in contravention of any other applicable appropriations law.

### IX.   INTERPRETATION AND USE OF SETTLEMENT AGREEMENT

18. The Parties agree not to submit this Settlement Agreement to the Court for its approval, and Twin Pines agrees not to attach the Settlement Agreement to its notice of voluntary dismissal. However, no party asserts that this Agreement is confidential.

19. This Agreement is the result of compromise and settlement and does not constitute a concession, implied or otherwise, by any party to any alleged wrongdoing, liability, or an admission to any alleged fact, claim, or defense concerning any issue in this case or any similar claims brought in the future by any other party.

20. Except as to Twin Pines, no part of this Agreement shall have precedential value in any pending or future litigation, representations before this Court or any other court, administrative action, forum, or any public setting.

21. This Agreement shall be governed by and construed under the laws of the United States.

**X.   TERMINATION**

22. This Agreement shall terminate on the earlier of: (a) the five-year expiration of the Twin Pines AJDs as calculated consistent with Paragraph 6 above; (b) the occurrence of circumstances as described in Paragraph 11 above; or (c) the reactivation of this case pursuant to Paragraph 15 above.

**AGREED TO BY PLAINTIFF, THROUGH THE FOLLOWING AUTHORIZED REPRESENTATIVE(S):**

Dated: 8-19-2022

Lewis B. Jones
John L. Fortuna
Jones Fortuna LP
111 New Street, Suite A
Decatur, GA 30030
(404) 850-3835
ljones@jonesfortuna.com
jfortuna@jonesfortuna.com

Mark D. Johnson
Gilbert Harrell Sumerford & Martin, P.C.
777 Gloucester Street, Suite 200
Post Office Box 190
Brunswick, Georgia 31520
(912) 265-6700
mjohnson@ghsmlaw.com

*Counsel for Twin Pines Minerals, LLC*

**AGREED TO BY DEFENDANTS, THROUGH THE FOLLOWING AUTHORIZED REPRESENTATIVE(S):**

Todd Kim
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

_____     Dated: 8/22/2022
Andrew J. Doyle
Trial Attorney
ENRD Field Office
450 Golden Gate Avenue, Room 7-6714
San Francisco, CA 94101
(415) 744-6469
andrew.doyle@usdoj.gov

*Counsel for United States Army Corps of Engineers; Christine E. Wormuth, in her official capacity as the Secretary of the Army; Michael L. Connor, in his official capacity as Assistant Secretary of the Army (Civil Works); LTG Scott A. Spellmon, in his official capacity as Chief of Engineers; BG Jason E. Kelly, in his official capacity as Commander, South Atlantic Division, United States Army Corps of Engineers; and COL Joseph R. Geary, in his official capacity as Commander, Savannah District, United States Army Corps of Engineers*