**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

| | |
|---|---|
| TWIN PINES MINERALS, LLC, <br><br>     *Plaintiff*, <br><br> v. <br><br> U.S. ARMY CORPS OF ENGINEERS; CHRISTINE E. WORMUTH, Secretary of the Army; MICHAEL L. CONNOR, Assistant Secretary of the Army (Civil Works); LTG. SCOTT A. SPELLMON, Chief of Engineers; BG. JASON E. KELLY, Commander, South Atlantic Division; COL. JOSEPH R. GEARY, Commander, Savannah District, <br><br>     *Defendants*. | Civil Action No: 5:22-cv-00036-LGW-BWC |

**<u>DECLARATION OF STEVEN R. INGLE</u>**

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.      My name is Steven R. Ingle. I am over the age of 18 and competent to testify. The facts in this declaration are based on my personal knowledge regarding these events and are true and correct to the best of my knowledge and recollection. I offer this declaration in support of the Motion for Preliminary Injunction filed by Twin Pines Minerals, LLC ("Twin Pines") and for any other lawful purpose.

2.      I am the President of Twin Pines Minerals, LLC, a position I have held since 2014. As the President of the company, I oversee and am responsible for Twin Pines' operations, including its efforts to develop, construct and operate a heavy mineral-sands mine in Charlton County, Georgia known as the Saunders Demonstration Mine.

1

3. The Saunders Demonstration Mine will use state-of-the-art techniques to recover heavy minerals, including titanium and zirconium, from deposits underlying Twin Pines' property in Charlton County. The mine will provide good-paying jobs and economic development in Charlton County and the surrounding areas. The project is expected to provide between 100 and 200 full-time jobs. The mine will also provide a significant boost to the local and regional economies, while generating millions in state and local tax revenues. In fact, the project will almost double Charlton County's tax base when it is completed. The project has been expressly endorsed and is supported by the Board of Commissioners of Charlton County and the City of Folkston and Charlton County Development Authority, where it will be located. True and correct copies of a Proclamation of Support adopted by the Charlton County Board of Commissioners and a letter of support from the Development Authority are attached as Exhibit A to this declaration.

4. Twin Pines has been working since at least 2017 to develop the mine and has invested enormous sums in the effort. To date, Twin Pines has invested more than $47 million in the project to secure property rights; characterize the property's geology, hydrology, and natural and cultural resources; purchase equipment; and apply for the necessary permits and approvals. These expenditures include:

- More than $14.7 million to acquire property for the mine site in Charlton County;

- $13.5 million to purchase, transport, and maintain mining and mineral processing equipment;

- $3 million for exploration, research, and development costs, including costs for drilling core samples and conducting lab analyses to characterize and establish the mineral composition of the mine site; and

- More than $16 million for permitting and engineering costs, including costs for drilling wells, developing groundwater models to demonstrate that the mine will not harm groundwater resources, and preparing applications for the necessary permits, which must be supported by detailed technical information including site plans, engineering drawings, hydrologic models, and wetland delineations.

2

Further, as I discuss in more detail below, Twin Pines continues to incur costs on an ongoing basis. These costs will continue to accrue every month that Saunders Demonstration Mine is delayed.

5.    A substantial portion of the $16 million in permitting costs reported above was incurred to apply for a Section 404 Permit from the U.S. Army Corps of Engineers. We originally applied to the Corps for a 404 permit in July 2019. At the Corps' suggestion, a revised application for a smaller project — the "Saunders Demonstration Mine" — was submitted on March 4, 2020. Expenditures in support of the Section 404 Permit application included assembling a large team of experts to anticipate and address permit requirements related to its Section 404 permit, including but not limited to the Army Corps of Engineers' "public interest review" and "mitigation requirements."

6.    Twin Pines also participated in a virtual public meeting in support of the Section 404 Permit on May 13, 2020. This public meeting resulted in tens of thousands of comments being submitted, including substantive comments by the U.S. Environmental Protection Agency and the U.S. Fish and Wildlife Agency. The Corps provided these comments to Twin Pines, and our team spent hundreds of hours and hundreds of thousands of dollars preparing responses to be provided to the Corps.

7.    After the Navigable Waters Protection Rule became effective on June 22, 2020, Twin Pines sought and obtained "approved jurisdictional determinations," or "AJDs," to determine if areas within the proposed mine site would still be considered jurisdictional. The first AJD was issued on October 15, 2020. While it showed that some areas within the proposed mine footprint would still be considered jurisdictional, I determined that our project would still be economically viable without including those areas. Therefore, in reliance on the AJD, I instructed our team to revise the project boundary to avoid jurisdictional areas, withdraw the Section 404 permit

application, and redouble our efforts to obtain the necessary permits and approvals from the State of Georgia.

8.      The 404 Permit application was withdrawn on October 21, 2020. By revising the project area to avoid jurisdictional areas delineated in the AJDs, I made a decision to forgo substantial mineral deposits that could have been mined from those areas. This decision was made in reliance on the Corps' written assurance that the AJDs would remain valid for a period of five years, and thus that federal permits would not be needed — and the attendant delays could be avoided — if we stay out of those areas. The company then submitted a revised Surface Mining Permit Application to Georgia EPD in November 2020, which reduced the size of the project to avoid all jurisdictional areas.

9.      We submitted a second request for an approved jurisdictional determination covering additional areas in November 2020. It was granted on March 24, 2021. We subsequently revised our Surface Mining Permit Application again to one of the wetlands deemed non-jurisdictional to the proposed project boundary.

10.     Both of the AJDs issued to Twin Pines stated in writing that they would "remain valid for a period of 5 years." Despite these Corps' assurances, however, Assistant Secretary of the Army (Civil Works) Michael Connor (the "ASA") issued a memorandum on June 3, 2022 rescinding Twin Pines' AJDs. Twin Pines did not receive prior notice about this decision, or about the fact it was even being considered, from the Corps or from the Office of the Assistant Secretary. I learned about it on June 3 from a reporter who forwarded a copy of Senator Ossoff's press release stating the ASA had granted the Senator's request to "restore protection" to the Okefenokee Swamp.

4

11.     On June 7, 2022, Georgia EPD issued a "Permitting Update" stating that the agency was halting work on all of Twin Pines' pending permit applications. The update stated that Georgia EPD would not resume processing those applications "until either any required 404 permit is issued by the Corps, the Corps determines that a new AJD is no longer needed, or the Corps determines that a 404 permit is not required." Georgia EPD further stated that it would reassess "what permits are required for the Demonstration Mine" and "determine the best process for consideration of these permit applications" only after "the conclusion of the federal process." A true and correct copy of Georgia EPD's Permitting Update is attached as Exhibit B to this declaration.

12.     The Corps' Savannah District finally informed me of the ASA's directive by letter dated June 8, 2022. The letter stated:

> As directed by the ASA(CW), I am notifying you that the NWPR AJDs are invalid and that you cannot rely on those AJDs to accurately delineate jurisdictional waters under the current regulatory regime. You may however request a new AJD. Any newly issued AJD must follow the applicable regulatory regime for the definition of "waters of the United States" at the time of AJD issuance. With the vacatur of the NWPR, AJD requests are currently being completed consistent with the pre-2015 regulatory regime.

A true and correct copy of the June 8, 2022 letter from the Savannah District is attached as Exhibit C to this declaration.

13.     The Corps' decision to rescind the AJDs has harmed Twin Pines and the people who depend on the company for their livelihoods. These harms have already begun, and they will continue to grow each day the decision remains in effect.

14.     On June 9, 2022, the day after Twin Pines received notice of the ASA's decision from the Savannah District, I had to lay-off three workers from our Charlton County site and transfer a fourth to a location across the country in California. The company cannot afford to

5

continuing paying employees to wait for a project that is stayed indefinitely. The layoffs caused by the ASA's action hurt our people, and it also hurt our company and our culture, because we lost valuable employees and because we are committed protecting our employees' well-being.

15.     The delays caused by the ASA will also cause Twin Pines to suffer substantial monetary harm in the form of lost minerals, lost business opportunities, lost work product, and additional permitting costs.

16.     The ASA's action, if upheld, will result in substantial acreage within the current proposed mine site being deemed jurisdictional. This outcome will not result from the ASA's directive to consult with the Muscogee Nation, but from his decision to "invalidate" the AJDs pending such consultation. The ASA has stated that any "new" AJD must comport with the regulatory definition of "waters of the United States" in effect when they are issued. My understanding is that more than 300 acres of wetlands within the current project boundary are likely to be considered jurisdictional under the current definition.

17.     If these wetlands are deemed jurisdictional, Twin Pines will either have to abandon them (and the minerals they contain) or reapply for a Section 404 permit. My company cannot forgo revenue indefinitely while spending millions of dollars to pursue a new Section 404 permit, as would be required to recover minerals from the newly-jurisdictional areas. As Senator Ossoff noted in his press release, any company seeking a 404 permit to mine this area will now be required to restart the permitting process essentially from the beginning. This is not an option after the delays we have already experienced. It is a business imperative to bring minerals to market as soon as possible.

18.     Therefore, if the ASA's action is not set aside in short order, I have directed my team to revise our application to Georgia EPD to reduce the project boundary and carve-out newly

jurisdictional areas resulting from the ASA's rescission of Twin Pines' AJDs. If forced to take this action, the company will again be forced to leave heavy mineral deposits worth millions in the ground — deposits that could be recovered, and would be, if not for the ASA's action.

19.     If we are forced to revise our permit application to Georgia EPD, it is possible that this change will be permanent. I have been informed by my staff that Georgia EPD has stated that no modifications to Twin Pines' Surface Mining Permit will be approved after a permit is issued. While I do not understand the basis of this assertion, and the agency would clearly have discretion to approve a modification, there is no guarantee that Georgia EPD will change its mind. Therefore, there is a high risk that the company's change in position based on the ASA's decision to rescind our AJDs will be permanent and irreversible, even if the ASA's action is subsequently set aside.

20.     In addition to lost profit, the immediate delay caused by the ASA's action — including the fact that it caused Georgia EPD to stop work on our pending permit application — is causing irreversible harm to Twin Pines' business in the form of lost business opportunities and lost financing.

21.     The Corps' rescission of the AJDs is preventing Twin Pines from contracting with buyers. Heavy minerals from the Saunders Demonstration Mine will be sold pursuant to "offtake" agreements, which obligate buyers agree to purchase predetermined quantities of minerals meeting specified grades during each year of the contract. Twin Pines has received signed letters of intent from numerous prospective purchasers stating their desire to enter into such agreements with us. Because buyers commit to have funds available to purchase minerals when they become available, they need to know, at least in general terms, when the minerals will be available. Few are willing to enter into offtake agreements for a project that has been indefinitely delayed. The delays and

uncertainty caused by the ASA's action are thus preventing buyers from executing these agreements with the company.

22.     This same uncertainty is harming Twin Pines' ability to secure outside investment and the capital needed to develop the Sanders Demonstration Mine. Like Twin Pines' buyers, investors need some reasonable assurance that the mine will ultimately be permitted, and its timeline for commencing operations, before they invest significant sums in a mining project. Twin Pines cannot provide investors the information they need, however, when the process for obtaining the necessary permits and approvals is indefinitely delayed due to the ASA's decision.

23.     Delays caused by the ASA's action also impose a direct cost on Twin Pines, which must continue to spend substantial sums to maintain the equipment it has already purchased. As previously noted, the company has already invested more than $28 million to purchase the land and mining equipment for the mine. Twin Pines must pay to service debt on these investments each month the project is delayed. And it is incurring substantial monthly expenses to store and maintain its equipment in working order. Because mineral prices are dictated by the global market, Twin Pines is unable to pass these costs through to its buyers, meaning that costs it incurs while the mine is delayed are sunk costs that cannot be recouped.

24.     Last but not least, Twin Pines will also be forced to spend substantial sums to revise its permit applications to Georgia EPD to avoid the newly designated jurisdictional wetlands. Work product that cost hundreds of thousands of dollars to produce will have to be redone. As noted, Twin Pines has already invested $16 million to obtain federal and state permits, which it would have received already if the rules of the game had not changed.

25.     I declare under penalty of perjury that the foregoing is true and correct.

Executed this **8th** day of ___July___, 2022.


_Steven R. Ingle_____
Steven R. Ingle

**INGLE DECLARATION**

**EXHIBIT A**

## BOARD OF COMMISSIONERS
## CHARLTON COUNTY, GEORGIA
## PROCLAMATION OF SUPPORT OF
## TWIN PINE MATERIALS, LLC

WHEREAS, the Charlton County Board of Commissioners is the governing authority of Charlton County, Georgia;

WHEREAS, economic development and quality, high-paying jobs are of vital importance to all local governments;

WHEREAS, the proposed heavy metal mining operation of Twin Pine Materials, LLC will result in approximately one hundred fifty (150) local high-paying jobs with benefits in Charlton County;

WHEREAS, the proposed capital investment of Twin Pine Minerals, LLC will result in substantial yearly tax revenue to the County;

WHEREAS, the estimated tax revenue from Twin Pine Minerals, LLC will allow Charlton County, Georgia to increase the level of service it provides to its citizens;

WHEREAS, the Charlton County Board of Commissioners finds and determines that the proposed operation of Twin Pine Minerals within Charlton County will result in economic development that is beneficial to all of Charlton County;

NOW, THEREFORE, the Charlton County Board of Commissioners, subject to approval by any other authority having jurisdiction, hereby proclaims and expresses support of Twin Pine Minerals, LLC proposed heavy mineral sand mining.

This 15th day of August 2019.

James E. Everett, Chairman
Charlton County Board of Commissioners

The City of Folkston and Charlton County Development Authority
PO Box 82
Folkston, Georgia 31537
912-390-9573

June 03, 2021

Georgia Environmental Protection Division
Richard E. Dunn, Director
2 Martin Luther King Jr. Drive, SE
14thFloor East Tower -Suite 1456
Atlanta, GA 30334-9000

Dear Director Dunn:

Members of the Charlton County Development Authority write today in unanimous support of the mining project proposed by Twin Pines Minerals in our county. We trust the experts at the Georgia Environmental Protection Division to objectively evaluate the facts in the permit applications and make a fair decision that will help our county and protect the environment.

We firmly believe the project can be undertaken without threatening the Okefenokee or the region's environment. We would not support this proposal if we felt it could jeopardize the swamp in any way as that is a major part of our local economy.

As businesspeople, we know that when a company invests $300 million in a project, as Twin Pines is doing in our community, the last thing they would want is to put it at risk. We have reviewed the project as proposed and look forward to the additional information Twin Pines is assembling per the EPD's direction. So far, nothing has given us reason to believe this project can't be a big success and that the county can't reap the benefits.

We need good jobs and significant new sources of tax revenue, both of which Twin Pines will create. We're talking hundreds of good paying jobs with benefits, and tax payments that could more than double the amount we take in each year.

We know from our own interactions with friends and neighbors that a large percentage of the people in Charlton County are confident that Twin Pines will fulfill the environmental protections required in the permits and are looking forward to operations getting underway.

Thank you for your diligent work in guiding the permitting process.

Sincerely,
Andy Gowen, President
Josh Popham, Vice President
Nancy Zetmeir, Secretary
Jim Gowen, Board Member
Al Reed, Board Member
Mark Pickren, Board Member
Joe Timmon, Board Member
Ashley Gowen, Executive Director

**INGLE DECLARATION**

**EXHIBIT B**



# Twin Pine Minerals, LLC Permitting Update

Many projects or facilities, like the proposed Twin Pines Minerals, LLC (Twin Pines) heavy minerals sands demonstration mine in Charlton County, Georgia (Demonstration Mine) necessitate both federal and state environmental permits.  The permits issued by the Georgia Environmental Protection Division (EPD) are separate and independent of any related federally-issued permits—*both* federal and state regulatory requirements must be fulfilled before a project can begin operations.  For these projects, EPD does not complete its evaluation of state permit applications until the related federal approvals have been issued.  This conserves EPD resources and avoids unnecessary duplication of effort by EPD and federal permitting authorities.

In November 2020, Twin Pines submitted its surface mining permit application to EPD for the Demonstration Mine.  Twin Pines has since submitted related addenda and additional substantive documents.  EPD has also received materials related to other potential state permits for the Demonstration Mine, including groundwater withdrawal, wastewater management, and air emissions.

The initial surface mining application followed an Approved Jurisdictional Determination (AJD) issued by the US Army Corps of Engineers (Corps) Savannah District Office on October 15, 2020.  That AJD, and the one issued by the Corps Savannah District Office on March 24, 2021, concluded that 556 acres of wetlands were excluded from federal regulation.  The Demonstration Mine has been the subject of intense community interest, shown in part by the number of comments received by the Corps during its review of the jurisdictional determination requests.

Because the Corps concluded that the wetlands were outside of federal jurisdiction in 2020, no federal permit was required and therefore the public would not have the opportunity to comment on such a permit.  In response, EPD established a multi-step process for the review of applications for the proposed Demonstration Mine to allow for extensive public input in the evaluation of potential environmental impacts on the natural resources of the state.  *See Twin Pines Minerals, LLC Permitting Fact Sheet* posted on February 8, 2021, at https://epd.georgia.gov/twin-pines.  That fact sheet also outlined the requirement for an environmental provisions addendum for the Demonstration Mine, requesting information and material that would, in part, have been sought by Corps during its federal permitting review.

On June 3, 2022, EPD learned that the Corps concluded that requisite tribal consultation had not occurred before the October 15, 2020 and March 24, 2021 AJDs were issued.  Consequently, the Corps directed its Savannah District Office to inform Twin Pines that it could not rely on those AJDs but could submit a request for a new AJD.  If the Corps' new AJD establishes jurisdiction over areas affected by the proposed Demonstration Mine, a Section 404 permit will be required.  In that event, it is likely that permit process laid out in EPD's February 2021 *Twin Pines Minerals, LLC Permitting Fact Sheet* will be revised.  Additionally, the shape, form, and

June 7, 2022

structure of the proposed Demonstration Mine may undergo significant revision or may be affected by any required wetlands mitigation under a 404 permit.

Given the Corps' recent action, Georgia EPD is deferring action on all applications for the Demonstration Mine until either any required 404 permit is issued by the Corps, the Corps determines that a new AJD is no longer needed, or the Corps determines that a 404 permit is not required.  Following the conclusion of the federal process, EPD will assess what permits are required for the proposed Demonstration Mine and determine the best process for consideration of these permit applications moving forward.

All updates from EPD on the project will continue to be posted on https://epd.georgia.gov/twin-pines.

June 7, 2022

**INGLE DECLARATION**

**EXHIBIT C**



**DEPARTMENT OF THE ARMY**
U.S. ARMY CORPS OF ENGINEERS, SAVANNAH DISTRICT
100 W. OGLETHORPE AVENUE
SAVANNAH, GEORGIA 31401-3604

**June 8, 2022**

Regulatory Division
SAS-2018-00554

Mr. Steven R. Ingle (single@twinpinesminerals.com)
Twin Pines Minerals, LLC
2100 Southbridge Parkway
Birmingham, Alabama  35209

Dear Mr. Ingle:

   As you are aware, after the Navigable Waters Protection Rule (NWPR) went into effect on June 22, 2020, Twin Pines Minerals submitted requests for three approved jurisdictional determinations (AJDs) under the NWPR in September 2020, December 2020, and June 2021.  After the Corps issued the first of the three requested AJDs on October 15, 2020, Twin Pines Minerals withdrew its Clean Water Act (CWA) permit application for the Twin Pines Demonstration Project since the NWPR AJD resulted in a contiguous 1,060 acres of land that was under no federal CWA jurisdiction.  The Corps issued the second AJD on March 24, 2021, which resulted in an additional 329 contiguous acres with no federal jurisdiction under the CWA.  On August 30, 2021, the NWPR was vacated by a Federal District Court and the third requested AJD was withdrawn.

   In a memorandum dated June 3, 2022, the Assistant Secretary of the Army for Civil Works (ASA(CW)) determined that the NWPR AJDs issued to Twin Pines Minerals are not valid because government-to-government consultations with the Muscogee Creek Nation (MCN) regarding the AJDs were not conducted.  As directed by the ASA(CW), I am notifying you that the NWPR AJDs are invalid and that you cannot rely on those AJDs to accurately delineate jurisdictional waters under the current regulatory regime.  You may however request a new AJD.  Any newly issued AJD must follow the applicable regulatory regime for the definition of "waters of the United States" at the time of AJD issuance.  With the vacatur of the NWPR, AJD requests are currently being completed consistent with the pre-2015 regulatory regime. The ASA(CW)'s June 3, 2020 memorandum is enclosed for your reference.

   If you have any questions, please contact Mr. William Rutlin, Coastal Branch Chief, at 912-652-5893.

Sincerely,

Jason D. O'Kane
Chief, Regulatory Division

Enclosures



SACW


MEMORAND  M FOR COMMANDING GENERAL,    .S. ARMY CORPS OF ENGINEERS

S   BJECT:  Approved Jurisdictional Determinations (AJDs) for the Rosemont and Twin Pines Parcels


1.  References:

    a.  Memorandum for the Heads of E  ecutive Departments and Agencies dated January 26, 2021 from President Joseph R. Biden, subject: Tribal Consultation and Strengthening Nation-to-Nation Relationships.

    b.  Memorandum for Commanding General,    .S. Army Corps of Engineers dated April 20, 2021, from the Acting Assistant Secretary of the Army (Civil Works), subject: Rescission of Previous Guidance    Tribal Consultation Associated with a Draft Approved Jurisdictional Determination (AJD).

    c.  Letter to Mr. Stuart Gillespie of Earthjustice dated January 8, 2021, from the Los Angeles District Commander of the    .S. Army Corps of Engineers, subject: Tribal Consultation Concerning HudBay Mineral s Approved Jurisdictional Determination Requests (AJDs) Relating to the Rosemont Copper Mine.

    d.  Letter to Col. Daniel Hibner, Savannah District Commander of the    .S. Army Corps of Engineers dated April 10, 2020, from Mr. Turner Hunt, Muscogee Creek Nation (MCN) Historic and Cultural Preservation Department.

2.  Background.  The    .S. Army Corps of Engineers (Corps) makes formal determinations stating the presence or absence of  waters of the    nited States  on a parcel through the issuance of an AJD.  S    33 CFR 331.2.  The Corps applies the criteria set forth in the rule defining  waters of the    nited States  when determining whether a parcel contains jurisdictional waters.       33 CFR 328.3.  The Navigable Waters Protection Rule (NWPR) was issued on April 21, 2020, to define  waters of the   nited States.  (85 FR 22250).  On August 30, 2021, the NWPR was vacated nationwide (                    r              r          r                    ).

In his January 26, 2021 memorandum, President Biden reaffirmed the Federal government s enduring commitment to consultation as a means of strengthening the sovereign relationship between the    nited States and our Tribal Nations (reference 1.a.).  The memorandum directs all Federal agencies to engage in regular, meaningful,

SACW
S BJECT:  Approved Jurisdictional Determinations (AJDs) for the Rosemont and Twin Pines Parcels


and robust consultation with Tribal Nations on Federal actions that have Tribal implications.  The Army s Civil Works program has a long history of consultation with Tribal Nations on its projects, rules, and regulatory permit actions, and the Army Civil Works program is committed to maintaining and enhancing its record on consultation.

The Acting Assistant Secretary of the Army for Civil Works issued a memorandum on April 20, 2021 (reference 1.b.).  The April 20 memorandum rescinded a previous memorandum that precluded tribal consultation associated with a draft AJD.

3.  Rosemont Parcels AJD.  On January 8, 2021, the Los Angeles District (LA District) of the Corps sent a letter to Mr. Stuart Gillespie of Earthjustice which rescinded the offer of government-to-government consultation with the Tohono O odham Nation, the Pascua Yaqui Tribe, and the Hopi Tribe on the AJD requests received for the Rosemont parcels pursuant to the memorandum rescinded by reference 1.b. (reference 1.d.).  On March 14, 2021, the LA District issued an AJD for the Rosemont parcels which determined that all ephemeral waters present on the site were e cluded per regulation codified by the NWPR.

4.  Twin Pines Parcel AJDs.  In a letter dated April 10, 2020, MCN stated that they had not been officially consulted on the Twin Pines parcel AJD as required (reference 1.e.).  Additionally, the MCN later asked the Savannah District of the Corps (Savannah District) in a March 2021 email about the process to consult on JDs.  The Savannah District provided a copy of the memo dated January 4, 2021, which had precluded tribal consultation associated with a draft AJD and was later rescinded on April 20, 2021 (reference 1.b.).  The Savannah District provided two AJDs on October 15, 2020, and March 24, 2021.  These two AJDs concluded that 556 acres of wetlands were e cluded under the NWPR.

5.  This memorandum directs the Corps to immediately notify the AJD recipients for the Rosemont and Twin Pines parcels that they cannot rely on those AJDs to accurately delineate jurisdictional waters under the current regulatory regime and that their NWPR AJDs are not valid because the government-to-government consultations for the Federal actions regarding the determinations of jurisdictional status of waters on the parcels were not conducted as requested by the Tribes.  As noted earlier, the Corps previously determined that the government-to-government consultation request for the Rosemont AJD was to be honored and the MCN previously inquired about government-to-government consultation for the Twin Pines AJDs.  Given the specific circumstances associated with these AJDs, it is my policy decision that the Corps should have honored these government-to-government consultation requests.

SACW
S BJECT:  Approved Jurisdictional Determinations (AJDs) for the Rosemont and Twin Pines Parcels

The Corps is also directed to notify the Rosemont and Twin Pines project proponents of their option to request a new AJD.  Any newly issued AJD must follow the applicable regulatory regime for the definition of  waters of the   nited States  at the time of AJD issuance.  With the vacatur of the NWPR, AJD requests are currently being completed consistent with the pre-2015 regulatory regime.  If a new AJD request is received, the Corps shall e tend government-to-government consultation requests to the Tohono O odham Nation, the Pascua Yaqui Tribe, and the Hopi Tribe for the Rosemont parcels and the MCN for the Twin Pines parcel, as well as any other Tribal Nations who may be implicated by the respective AJDs.  If consultation is initiated, no new AJD will be issued until the conclusion of such consultation.

6.    pon conclusion of any tribal consultations that may occur, and prior to the District making any decisions on the path forward for any AJD requested, the Corps shall provide an update to the ASA(CW) in the form of a briefing on the consultation process conducted with the Tribes.

  .  These circumstances are unique to the Rosemont and Twin Pines parcels AJDs. Accordingly, the direction in this memorandum is limited to these AJDs and is not intended to establish or rescind any separate, nationwide policy guidance.

8.  Questions regarding this matter may be directed to Stacey Jensen, Assistant for Regulatory and Tribal Affairs, Office of the Assistant Secretary of the Army (Civil Works), at (  03) 459-6026 or stacey.m.jensen.civ@army.mil.


MICHAEL L. CONNOR
Assistant Secretary of the Army
 (Civil Works)


cf: DCG-CEO
    DCW